Servatius vs. Pichel.

## SERVATIUS VS. PICHEL.

SLANDER: CHURCH DISCIPLINE: PLEADING. (1) *What words defamatory Legal justification. Pleading.* (2) *Averment of special damages.* (3) *How church rule or canon to be pleaded.*

1. In an action for slander, plaintiff being a member and defendant a priest of the Roman Catholic church, the words charged were: "This P. S. [the plaintiff] is excommunicated because he laid hands on the priest to put him out of the church. I will not pray for him, and consider him a lost sheep, and wtihdraw all my pastoral blessings from him. If he shall die, the burial rites of the church will be denied him." *Held,*

    (1.) That these words are *defamatory*, in a legal sense, so that plaintiff may recover any special damage accruing to him therefrom, unless their publication was legally justifiable.

    (2.) That if the words were spoken by defendant *in the proper discharge of his clerical and pastoral duties*, and without malice, their publication was legally justifiable.

    (3.) That as the complaint alleges the words to have been *false*, and spoken by defendant *wantonly, maliciously and without authority*, with the intent to injure, etc., and also alleges special damages, it states a cause of action.

2. The complaint avers that at the time the words were spoken, plaintiff was doing a prosperous business in a certain city, had buildings to rent, and was receiving large rentals, etc.; that a large proportion of the people of said city and vicinity were members of the Roman Catholic church and were accustomed to trade with him; that by the rules and discipline of said church an excommunicated person is an object of abhorrence, to be shunned by all true Catholics, and all fellowship with him is forbidden; and that, by means of the speaking of the words charged, a large number of persons (naming them), members of said church, who had been accustomed to trade with the plaintiff, have been deterred from doing so, and he has lost large gains and profits of their business; and that by reason of the same words he has lost the rental of a store to a certain person named, and said store was kept vacant. *Held,* on demurrer, that the *special damages* alleged are sufficiently shown to be the *natural and proximate result* of the words charged.

3. The complaint is not bad, on demurrer, for failing to *set forth more exactly* the rule, canon or ordinance of the Roman Catholic Church in reference to excommunicated persons. It is sufficient that the same is stated in its *substance and effect.*

ERROR to the Circuit Court for *Winnebago* County.

Action for slander. The complaint alleges, in substance, that the plaintiff was a dealer in and manufacturer of boots and shoes, in the city of Fond du Lac, doing a large and prosperous business, and having buildings to rent, and receiving large rentals, etc., at the time when the words hereinafter recited were spoken; that he was a member in good standing of the Roman Catholic Church; that a large proportion of the population of Fond du Lac and vicinity are members of said church, and believers *in its tenets, faith and discipline,* and that by reason of their great number he is unable to state the names of the same; that they were accustomed to trade with the plaintiff, and from them he was wont to receive employment and derive large gains and profits, which would have been continued but for the speaking of said words; that by the rules, canons, ordinances and discipline of said church, an excommunicated person is an object of abhorrence, to be shunned and avoided by all true Catholics, so long as the ban of excommunication remains unrevoked, and all fellowship while in that state is barred and forbidden and discountenanced by the church and its members, and the rites and offices of the church prohibited to such persons in life and death, and after death; that the defendant, on etc., well-knowing, etc., but maliciously contriving to injure him, and to reduce and deprive him of his employment, profits, gains, etc., and especially *to deter members of the said church from dealing with him,* etc., did *wantonly, maliciously* and *without authority,* but with *the intent to injure,* speak, utter, publish and declare these *false, scandalous* and *defamatory words* of and concerning the plaintiff, to the congregation of which plaintiff was a member (defendant being a priest of said Roman Catholic Church and the pastor of said congregation): "This *Peter Servatius* is excommunicated, because he has laid hands on the priest to put him out of the church. He has no more benefits of the prayers of the church. I will not pray for him, and consider him a lost sheep, and

withdraw all my pastoral blessings from him.    If he shall die, the burial rites of the church will be denied him ; " that by means thereof a large number of persons (naming them), members of said church, have been deterred from trading with the plaintiff, who had been accustomed so to do, and but for the false utterances aforesaid would have done, and he had been on account thereof the loser of large gains and profits from their business ; and that by reason thereof he had also lost the rental of a store to a certain person (naming him) which he otherwise would have had, and lost large sums of money thereby, and said store was obliged to remain vacant, etc.

An answer was put in.    When the cause came on for trial, and a jury had been impanelled, and a witness sworn on behalf of the plaintiff, the defendant objected to the admission of any testimony under the complaint, on the ground that it failed to state facts sufficient to constitute a cause of action. The objection was sustained, and judgment for costs was entered against the plaintiff ; to reverse which judgment plaintiff sued out his writ of error.

*E. S. Bragg*, for plaintiff in error, admitted that proceedings in the church to enforce its discipiline, taken in good faith, and within its jurisdiction, are privileged.    The action is founded on the following propositions of law :    (1.) Any words are actionable by which the party suffers special damage.    (2.) Special damage consists in depriving one of some temporal advantage or benefit of value, which he would otherwise have received and enjoyed.    Townshend on Slander and Libel (2d ed.), secs. 197, 198.    (3.) The special damage must be the ordinary and natural result of the thing complained of.    American L. C., 127 ; 2 Smith's L. C. (6th ed.), 534.    (4.) Malice and intent to injure destroy the privilege which might otherwise protect. 1 American L. C., 180 ; *Jarvis v. Hatheway*, 3 Johns., 180 ; *Gassett v. Gilbert*, 6 Gray, 94 ; *Farnsworth v. Storrs*, 5 Cush., 412–416 ; *Dial v. Holter*, 6 Ohio St., 228 ; *Holt v. Parsons*, 23 Texas, 9.    An averment that the words were " falsely and maliciously."

spoken is sufficient. *Viele v. Gray,*, 10 Abb. Pr., 1; *S. C.*, 18 How. Pr., 550 ; 2 Wait's Practice, 397 ; 1 Chitty's Pr. (5th Am. ed.), 340. 2. To be open to the objection raised, the complaint must be so defective that, all its allegations being admitted, they furnish no cause of action whatever. 2 Wait's Pr., 453, and cases cited. 3. This is not an action for prospective damages merely, but damages accruing after action brought may be given in evidence. 4 Hurl. & Norm., 863. 4. It was not necesary to set out in *hæc verba* the canons and ordinances of the church. The defendant had the remedy of a motion to make the pleadings more certain. 5. It is questionable whether matter of inducement is subject to traverse. 2 Wait s Pr., 417, and cases. cited. 6. The words spoken were damaging to plaintiff's reputation. 9 Ohio St., 228.

*Finch & Felker*, for defendant in error, argued that all the damage arose after the suit was brought. The rule is, that if special damages are sought, they must have arisen before suit brought. 3 Denio, 346. 2. Courts do not take judicial knowledge of the rules, canons and ordinances of any church, and the subject matter of them in this case should have been pleaded. Legal conclusions only are stated in the complaint by way of inducement. The canons referred to do not in fact bear out the construction placed on them by plaintiff; and the court cannot tell from anything stated in the complaint whether the plaintiff's conclusions are correct or not. It is for the court to determine whether the words are actionable. 28 Wis., 134–137. And it is the office of the inducement to set out facts, not legal conclusions ; and it is for the court to construe the language, and to determine whether the words are capable of the meaning attributed to them, whether they were in fact used in that sense, and whether the damage sustained is the natural and proximate result of their use. 3. The words not being actionable *per se*, plaintiff must show special damage. A mere allegation of malice is not enough, unless connected with words which produce injury. And the injury must be the natural

and proximate consequence of the words spoken. In this case the damages are too remote. 2 Starkie on Slander, 65; 2 Hill, 314, 315; 4 id., 520; 8 East, 1; 1 Esp. R., 48. The special damage must flow from impaired reputation; the words must be defamatory. 17 N. Y., 57; *Vicars v. Wilcocks*, 8 East, 1; 5 Barn. & Adolph., 645. The words spoken here, taken in connection with the *facts* stated, could not injure the character of the plaintiff as a business man. 4. "Where words are spoken to one person, and he repeats them to another, in consequence of which the party of whom they are spoken sustains damage, the party who repeats them is alone liable for damages." *Terwilleger v. Wands*, 17 N. Y., 54; *Ward v. Weeks*, 7 Bing., 211; *Hastings v. Palmer*, 20 Wend., 225; *Kearholts v. Becker*, 8 Denio, 346; *Stevens v. Hartwell*, 11 Met., 542; Sedgwick on Dam., 92. 5. The canon decreed the plaintiff excommunicated; and defendant, without malice, as the words show, only pronounced the decree. The words spoken were privileged, and spoken by one having authority to do so, and in the . discharge of duty. 5 Cush., 412. Courts are instituted to decide temporal and not spiritual affairs; and the line between church and state should be clearly defined.

LYON, J. Several objections, founded upon certain alleged legal propositions, are taken to the complaint, either of which being well taken in fact and law, the complaint fails to state a cause of action. These are:

1. That the alleged slanderous words are privileged, and for the speaking thereof no action can be maintained.

2. That such words are not defamatory in their nature, and it is claimed that, in a legal sense, no damages can result from the speaking of words which are not defamatory.

3. That the losses complained of were not the natural and proximate result of the words spoken.

4. That all of the damages complained of have accrued since the action was commenced.

Servatius vs. Pichel.

5. That the complaint only states what is claimed to be the legal effect of the rules, canons and ordinances of the church, whereas it should have set out such rules, canons or ordinances.

These positions will be considered briefly in the order herein stated.

I. It is doubtless correctly observed by Mr. Townshend in his Treatise on the Law of Slander and Libel, that "the proceedings of the church to enforce its discipline are *quasi judicial*, and therefore those who complain, or give testimony, or act, or vote, or pronounce the result, orally or in writing, acting in good faith, and within the scope of the authority conferred by this jurisdiction, and not falsely or colorably making such proceedings a pretense for covering an intended scandal, are protected by law." § 233. This rule is the logical result of the principle laid down in the same section, that, " by becoming a member of a church, the individual tacitly consents to submit to the church discipline," and so long as discipline is administered in good faith, and without malice, the church member who is the object of it has no ground for complaint.

If, therefore, the words set out in the complaint were spoken by the defendant in the proper discharge of his clerical and pastoral duty, and without malice, no action for the speaking thereof can be maintained. In such case the publication would be privileged. This publication is not *absolutely* privileged, but it belongs to the class known in the law as " *conditionally* privileged." That is to say, it is privileged only on the condition that it was made without malice. The nature of this class of publications is stated by the chief justice in *Noonan v. Orton*, 32 Wis., 106. It is only necessary to refer to that case, and the authorities cited in the opinion, for a full exposition of the law on the subject.

The complaint in this action avers that the words in question were spoken and published by the defendant *without authority, wantonly and maliciously, and with intent to injure and scandalize* the plaintiff, and that they were *false*. Thus the

complaint expressly avers the existence of facts which are entirely incompatible with a conditionally privileged publication. If the above averments are true, the words complained of are not privileged ; and, for the purposes of this appeal, they must be taken as true.

II.    The words in question do not impute to the plaintiff a criminal· offense involving moral turpitude; yet they are defamatory in their character.   It is to some extent derogatory to a person, and affects his reputation unfavorably in the estimation of very many people, to be expelled or excommunicated from a christian church for a violation of its rules and discipline.   This is peculiarly true in the present case, since the learned counsel for the defendant have shown to our entire satisfaction, that the offense which it is charged was committed by the plaintiff, and for which the sentence of excommunication was pronounced against him by the defendant, is so heinous that he who commits it is *ipso facto* excommunicated from the church.   Surely it must be defamatory to impute to a person so grave an offense.   Hence the complaint states a cause of action in this respect, even though it be conceded that an action cannot be maintained unless the words are defamatory in a sense which involves something of moral delinquency.   But whether the term " defamatory," as employed in the rule which counsel for defendant seek to apply in this case, means anything more than that the alleged publication must be disparaging or injurious to the plaintiff, to be actionable if special damages result therefrom, is a question which we leave undetermined.   See Townshend on Slander and Libel, § 197, and cases cited.

III.    We think that the complaint shows that the damages and losses complained of were the natural and proximate results of the speaking of the alleged slanderous words by the defendant.   Facts are therein stated which show that the loss of customers and business would almost inevitably result from the sentence of excommunication, and did result therefrom.

Furthermore, it is charged in the complaint that the defendant intended, by the publication, to produce precisely these results. It would be difficult to hold that the damages which were foreseen and intended by the defendant, are not the natural and proximate results of his act.

In a note to the case of *Gilman v. Railroad Co.*, 12 Law Reg., 559, and again in an article published in 13 id., 14, Judge Redfield discusses, with great learning and discrimination, the proper application and extent of the maxim, "*In jure non remota causa sed proxima spectatur*," citing numerous authorities; and he reaches the conclusion, " that those consequences which the law treats as too remote for consideration in estimating damages, must be such as the defendant had no just ground to expect would flow from his act; in other words, such as were, upon the basis of his knowledge, rather accidental than natural or ordinary." (Law Reg. for Sept. 1873, p. 19.) Within this rule, the damages complained of in this action are clearly the proximate result of the alleged slanderous publication; and the principle of the rule was substantially approved and applied by this court in *Kellogg v. The C. & N. W. R'y Co.*, 26 Wis., 223.

IV. That the complaint alleges that the plaintiff had suffered special damages by reason of the publication of the slanderous words, before this action was commenced, cannot be doubted. This is sufficient, and it would be premature to determine here whether he may or may not recover prospective damages also, that is, damages accruing after the commencement of the action.

V. We are unable to say that the complaint does not set out the rule, canon or ordinance of the church relative to the treatment of excommunicated persons, according to the tenor and effect thereof. We think it sufficient to state the substance of the rule or canon in question, and that it is not incumbent on the plaintiff to copy the same into his com-

plaint. If it be not stated with sufficient certainty, a motion to make more definite and certain is the remedy.

Our conclusion is, that the complaint states facts sufficient to constitute a cause of action.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial awarded.