### Chicago & E. I. R. R. Co. v. Orsemas T. X. Adams.

1. RAILROADS—*Power to Eject Passengers from Trains.*—Where the conductor of a passenger train finds a passenger on his train who has a ticket entitling him to a passage from a station not yet reached by the train, to his intended destination, he has a right to demand fare for that portion of the road between the station where such passenger got upon the train, and the station not yet reached, and upon his refusal to pay the same, to eject him from the train.

2. SAME—*Wrongfully Ejecting Passengers—Damages.*—A passenger wrongfully ejected from a train is not limited to damages as for a breach of contract, but may recover reasonable compensation for wounded pride and humiliation.

**Trespass on the Case,** for being ejected from a railroad train. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1895. Reversed and remanded. Opinion filed December 2, 1895.

WILL H. LYFORD and JOSEPH B. MANN, attorneys for appellant, contended that when the appellee entered the train at Crete, he contracted with the appellant he would pay his fare from Crete. He violated his contract by tendering to the conductor only his ticket from Columbia Heights, and was, therefore, lawfully ejected from the train. Manning v. L. & F. R. R. Co., 95 Ala. 392; 3 Wood's Ry. Law, Sec. 361, 1433; Wheeler on Carriers, 174; Hutchinson on Carriers (2d Ed.), Sec. 580 a; Hill v. R. R. Co., 63 N. Y. 101; State v. Campbell, 32 N. J. Law 309; Swan v. R. R., 132 Mass. 116; Davis v. R. R. Co., 53 Mo. 317; Stone v. R. Co., 47 Ia. 82; Hall v. R. R. Co., 9 A. & E. R. R. Cas. 348; Pennington v. R. R. Co., 18 Ib. 310; Pickens v. R. R. Co.,

40 Ib. 649; R. R. Co. v. Gants, 34 Ib. 290; Johnson v. R. Co., 46 N. H. 213; Rose v. R. R. Co., 11 S. E. Rep. 526.

HOLLETT & TINSMAN, attorneys for appellee.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

On Saturday, December 5, 1891, the appellee and his brother bought, at the office of the appellant, a ten ride ticket between Chicago and Columbia Heights, and were told by the ticket agent that all trains stopped at Columbia Heights.

They went that night to Columbia Heights, and to a farm in the vicinity, and Sunday afternoon returned to Columbia Heights to take the train back to Chicago, but the train went by without stopping, although the appellee, his brother and two others were on the platform giving signals to stop. So the appellee and his brother returned to the farm, and on Monday morning went to Crete, another station farther from Chicago 1 6-10 miles, as appellant's brief says—but certainly a short distance—in order to be at a station at which the train would stop. The station house at Crete was not open, so that tickets from Crete to Columbia Heights could not be obtained.

When the conductor came to them for tickets before reaching Columbia Heights, the appellee presented the ticket, and endeavored to explain his experience the night before, in vainly trying to take the train at Columbia Heights. At this point begins a conflict in the testimony, and yet it appears to us that the witnesses are all honest, and testify in opposition to each other because they did not understand each other at the time of the occurrences to which they testify. The brothers say the conductor demanded fare, twenty-two cents, from Crete to Chicago Heights, which is nearer Chicago than Columbia Heights, while the conductor says he demanded fare from Crete to Columbia Heights only, but as he had no rate for that distance, he would make the price from the rate between Crete and Chicago

Heights at five cents. We infer that the twenty-two cents was for two fares, and the five cents for one, but in the view we take of the case it is immaterial whether that inference is right or not. It is quite clear, we think, that no formal demand for, or offer of, any exact sum as fare from Crete to Columbia Heights was made either way. At Columbia Heights the brothers were put off the train, and it is not disputed by the appellee that if they refused to pay fare from Crete to that place they were rightfully put off, notwithstanding their ticket from that place to Chicago. Manning v. Louisville & Nashville R. R., 95 Ala. 392, collects the authorities.

The other brother went off without a struggle. The appellee resisted with all his strength, and does not claim that the conductor and brakeman who put him off used more force than was necessary, except, as he testifies, one of them struck him on the back of his neck. This is denied by them, and the difference between a necessary push, and an unnecessary blow, might not be very obvious to a man leaving the steps of a railway car under compulsion and in haste. At any rate, he was not hurt.

Now, if we assume that the appellee was wrongfully put off, that entitles him to recover any pecuniary damages he sustained thereby, and of such there is no evidence; and also damages for any unnecessary force used in putting him off. Probably there was none. But for injuries sustained from the force necessary to overcome his resistance, he is not entitled to damages. North Chi. St. R. R. Co. v. Otis, 40 Ill. App. 421.

Yet, if wrongfully put off, he is not limited to damages as for a breach of contract, but is to have a proper compensation for wounded pride and humiliation. But that must be reasonable, which means that nobody can lay down a rule for it.

Now, on the facts as stated, the court gave for the appellant this instruction:

"2. If the jury believe, from all the facts and circumstances in this case, that the plaintiff did not intend in any

event to pay any sum as additional fare for being carried from Crete to Columbia Heights, then, although the jury may believe that the conductor demanded a greater sum as such additional fare than the defendant had a right to charge, such demand alone did not entitle the plaintiff to remain on the train." And refused these:

" 6. The fact that the plaintiff held a ticket from Columbia Heights to Chicago did not entitle him to ride from Crete to Chicago without paying additional fare, although the train failed to stop at Columbia Heights Sunday afternoon.

" 7. If the jury believe from the evidence that the conductor of defendant's train demanded of the plaintiff that plaintiff should pay the fare from Crete to Columbia Heights, and that plaintiff refused to pay the same, then the conductor had the right to put the plaintiff off the train at Columbia Heights, using no more force than was reasonably necessary for so doing, although plaintiff had a ticket entitling him to ride from Columbia Heights to Chicago."

The appellee justifies the refusal of 6 and 7, on the ground that they are covered by 2, but this is not a tenable ground.

Appellant was entitled to 6, as a jury would very naturally believe the exact contrary of what is stated in it, as probably did the appellee and his brother; and 7 is directed to an actual refusal by the appellee to pay the rightful fare—both matters distinct from the subject-matter of 2, which is that a demand of too much fare might, under circumstances, be overlooked. Those instructions should have been given; not that they would have had any effect, but to preserve the symmetry of the law; and specifically for the error committed in refusing them, the judgment is reversed and the cause remanded.